UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIANNA POTTS and REBECCA COWLES,

    Plaintiffs,

v.                              Case No: 8:13-cv-2896-T-27TGW

B & R, LLC,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Defendant's Motion to Sever the Claims of Plaintiffs or, in the Alternative, Motion for Separate Trials and Supporting Memorandum of Law (Dkt. 5) and Plaintiffs' response (Dkt. 6). Upon consideration the Motion is DENIED without prejudice.

### I.    BACKGROUND[1]

Plaintiffs bring this employment discrimination and retaliation action alleging they were subjected to racial and sexual harassment by their supervisor, Eddie Pierce, and retaliation following complaints to management and the EEOC.

    A.    **Plaintiff Kianna Potts**

Plaintiff Potts, an African American, was employed by Defendant from 1999 until February 2012 (Dkt. 1, ¶ 9).[2] According to the Complaint, Pierce, a manager, "regularly shouted and yelled at employees, and he regularly referred to female employees as 'bitches,' 'cunts,' 'fucking bitches,'

---

[1] The following facts are taken from Plaintiffs' Complaint (Dkt. 1).

[2] Both Plaintiffs worked at the same McDonalds restaurant, which was a franchisee of Defendant.

1

'stupid bitches,' and 'whores'" (*Id.*, ¶ 11). Pierce also regularly used racial slurs such as "nigger" and "fucking nigger" in reference to Potts and other African American employees (*Id.*, ¶¶ 12, 14). He also called her by "pet names" such as "Shaniqua" and "Fried Chicken" (*Id.*). Pierce assigned African Americans to work in the back of the restaurant, a hot environment where the food is prepared (*Id.*, ¶ 14).

B. **Plaintiff Rebecca Cowles**

Plaintiff Cowles, who is Caucasian, was employed by Defendant from May 2010 until May 2011. Pierce regularly used sexual and racist slurs in her presence as well (*Id.*, ¶ 15). Pierce addressed Cowles as "cunt" and "stupid bitch," and yelled at her and threw objects around the restaurant. (*Id.*, ¶ 16).

C. **Plaintiffs' Complaints to Management**

Potts complained to management about Pierce's racial slurs and was interviewed, with Pierce present, by an assistant (*Id.*, ¶ 18). No disciplinary action was taken against Pierce (*Id.*, ¶ 19). Cowles also complained to management about Pierce's racial and sexual slurs (*Id.*, ¶ 20). Pierce denied using any such slurs, but apologized to Cowles (*Id.*). No further action was taken by Defendant (*Id.*).

Potts and Cowles retained an attorney who wrote to Defendant regarding their complaints of sexual and racial harassment (*Id.*, ¶ 21). Management personally met with Potts and told her he would instruct Pierce to apologize, but that no further action was necessary (*Id.*).

After Cowles complained, Defendant drastically reduced her hours (*Id.*, ¶ 22). The sexual slurs continued and Cowles was no longer able to tolerate them, so on May 18, 2011, she quit (*Id.*). On June 8, 2011, Plaintiffs filed EEOC charges (*Id.*, ¶ 23). Shortly thereafter, Potts, who was

2

pregnant with twins, requested to be moved from the grill to the front counter because the heat was making her sick (*Id.*, ¶ 24). On August 22, 2011, Potts went on maternity leave, gave birth on November 8, 2011, and attempted to return to work on February 9, 2012 (*Id.*, ¶ 25). She was told there was no job for her, despite a perpetual turnover of employees (*Id.*).

On April 17, 2013, the EEOC issued Letters of Determination, finding there was reasonable cause to believe that Defendant had subjected Potts to a hostile work environment because of her sex and race, that Defendant had subjected Cowles to a hostile work environment because of her sex, and that Defendant had retaliated against both Potts and Cowles for engaging in protected activity, in violation of Title VII (*Id.*, ¶¶ 26-27). After conciliation failed, the EEOC issued Notices of Right to Sue as to both plaintiffs (*Id.*).

### D.    Claims

Potts brings a claim for racially hostile work environment, and both plaintiffs bring a claim for sexually hostile work environment and retaliation. Defendant moves to sever the claims of each plaintiff pursuant to Federal Rule of Civil Procedure 21.

Defendant contends that Potts' racial harassment claim is based on separate and distinct transactions and occurrences from Potts' and Cowles' sexual harassment claims. Defendant also argues that the retaliation claims are based on separate facts as Plaintiffs were allegedly retaliated against in different ways. In the alternative, Defendant requests separate trials pursuant to Rule 42(b) because of the risk of severe and unfair prejudice posed by a joint trial due to the "potential inflammatory effect of potential evidence the jury will hear regarding racial slurs, which only has bearing on" Potts' claim.

## II. STANDARD

Joinder under Rule 20(a)(2) is proper where: "(1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and (2) some question of law or fact common to all persons seeking to be joined." *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003). In determining whether claims arise from the same transaction or occurrence, or series of transactions or occurrences, courts in the Eleventh Circuit apply the "logical relationship" test. *See Smith v. Trans–Siberian Orchestra*, 728 F.Supp.2d 1315, 1319 (M.D. Fla. 2010) (citing *Republic Health Corp. v. Lifemark Hosps. of Fla.*, 755 F.2d 1453, 1455 (11th Cir.1985)). "Under this test, a logical relationship exists if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claim." *Id.* (citing *Republic Health*, 755 F.2d at 1455). In other words, "there is a logical relationship when 'the same operative facts serve as the basis of both claims.'" *Republic Health*, 755 F.2d at 1455 (quoting *Plant v. Blazer Fin. Servs., Inc.*, 598 F.2d 1357, 1361 (5th Cir. 1979)). "[O]nly claims that do not arise from common operative facts are not logically related." *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1381 n.1 (11th Cir.1991). The "logical" relationship standard is a "loose" one "which permits a broad realistic interpretation in the interest of avoiding a multiplicity of suits." *Plant*, 598 F.2d at 1361 (internal quotations omitted).

Joinder is "strongly encouraged" and the rules are construed generously towards "entertaining the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). District courts, however, enjoy equally broad discretion to sever parties based on misjoinder. *Alexander*, 207 F.3d at 1323; *Swan*

*v. Ray*, 293 F.3d 1252, 1253 (11th Cir.2002) ("The district court has broad discretion to join parties or not and that decision will not be overturned as long as it falls within the district court's range of choices."). When assessing whether the requirements of Rule 20(a)(2) are satisfied, the factual allegations in the plaintiff's complaint are accepted as true. *See Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009). Rule 20 must be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Rule 21 authorizes district courts to "sever any claim against any party." A district court also has broad discretion when deciding whether to sever claims under Rule 21 and may consider factors such as judicial economy, case management, prejudice to parties, and fundamental fairness. *See Anderson v. Moorer*, 372 F.2d 747, 750 n.4 (5th Cir.1967) (considering judicial economy); *In re Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1367 (11th Cir.2010) (affirming district court's decision to sever based on case management concerns); *Foster v. Auburn Univ. Montgomery*, No. 2:11–cv–503–WHA–CSC, 2011 WL 3875623, at *4 (M.D. Ala. Sept. 1, 2011) ("[A] court's decision to sever parties under Rule 21 should be tempered by the possibility of prejudice to the severed party."); *Acciard v. Whitney*, No. 2:07–cv–476–UA–DNF, 2008 WL 5120820, at *1 (M.D. Fla. Dec. 4, 2008) ("Courts are given discretion to decide the scope of the civil action and to make such orders as will prevent delay or prejudice."); *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521–22 (5th Cir. 2010) (considering fundamental fairness of joinder to the parties). The Supreme Court has instructed district courts to employ a liberal joinder policy in the interest of judicial economy. *See Alexander*, 207 F.3d at 1323.

## III. DISCUSSION

Plaintiffs must establish two prerequisites for joinder under Rule 20(a)(2): "(1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and (2) some question of law or fact common to all persons seeking to be joined." *Alexander*, 207 F.3d at 1323. The Complaint alleges that both plaintiffs were subjected to a sexually hostile work environment by their manager/supervisor, Pierce, during overlapping time frames, and at the same location. Defendant does not contend these allegations and claims are unrelated. In addition, after Potts and Cowles complained to management and filed charges with the EEOC, they both claim they were subjected to retaliation for this protected activity.

The issues, therefore, are whether the presence of Potts' claims that she was subjected to a racially hostile work environment and/or that the various retaliatory actions taken by Defendant with respect to each plaintiff (1) destroy the propriety of joinder, or (2) justify severance because of the risk of prejudice to Defendant. The Eleventh Circuit's opinion in *Weatherly v. Alabama State Univ.*, 728 F.3d 1263, (11th Cir. 2013) is instructive in answering the first question. In *Weatherly*, three plaintiffs brought claims for racial and sexual harassment, a hostile work environment, and "various forms of retaliation." *Id.* at 1269. The district court denied without prejudice the defendant's motion to sever the claims of each plaintiff. *Id.* The district court found that there were some overlapping factual and legal issues with respect to the harassment and retaliation claims, and that they arose out of the same occurrences and should be kept together during discovery.[3] *Id.* at 1269 n.4. The Eleventh Circuit held that the district court's denial to sever the cases for the purposes of discovery was not an abuse of discretion. *Id.* at 1270.

---

[3] In denying the motion to sever, the district court stated that the defendant would be allowed to re-raise the issue prior to trial. *Weatherly*, 728 F.3d at 1270. The defendant failed to do so. *Id.*

Similarly, Potts and Cowles both claim they were subject to a hostile work environment by Pierce because of his sexually and racially abusive conduct --conduct that is common, at least in part, to both plaintiffs. There is *"some* question of law or fact common to all persons seeking to be joined," including whether Defendant subjected Plaintiffs to a sexually hostile work environment and whether the events that occurred after they complained constitutes unlawful retaliation. And they arise out of the same transactions or occurrences: the alleged pervasive policy or practice of discrimination by Defendant arising out of Pierce's conduct at a specific McDonalds during a specific time frame. *See Wilson v. Fleetwing Corp.*, 8:05-CV-2057-T-27MAP, 2006 WL 2228930, *1 (M.D. Fla. Aug. 3, 2006).

That Potts and Cowles suffered different forms of retaliation does not make joinder improper in this case. In *Weatherly*, the plaintiffs suffered "various forms" of retaliation. Two of the plaintiffs were terminated, and one was transferred. *Id.* at 1266-68. The different effects of the defendant's common conduct did not preclude a determination that joinder, at an early stage of the case, was proper. In this case, Cowles quit because she could no longer endure the slurs by Pierce, and Potts alleges she was discharged when she was not permitted to return to work after maternity leave. "The fact that the Plaintiffs suffered different effects . . . from the alleged policy of discrimination [does] not preclude the trial court from finding a common question of law and fact." *Alexander*, 207 F.3d at 1324; *see also Wilson*, 2006 WL 2228930, at *1 ("While there are some dissimilarities in the manner in which the Plaintiffs claim to have been discriminated against, by and large they allege virtually identical treatment based on their race, including disparaging comments and acts of retaliation. . . . Notwithstanding some differences in their treatment, these Plaintiffs allege essentially a pervasive policy or practice of discrimination by Defendant which satisfies the 'same transaction or occurrence' test of Rule 20."). There is a logical relationship between Plaintiffs' claims and at

7

least some question of law of fact common to both plaintiffs. Accordingly, joinder at this stage is proper.

As to the second question, because the thrust of Defendant's argument is that it will be prejudiced at trial, the question may be revisited at a later date after the evidence in the case has been more fully developed. At this point in the proceedings, however, judicial economy is served by joinder, rather than proceeding in duplicative suits with duplicative discovery. *See Weatherly v. Alabama State Univ.*, Case No. 210CV192-WHA, 2010 WL 1753190, *3 (M.D. Ala. Apr. 30, 2010) *aff'd*, 728 F.3d 1263 (11th Cir. 2013). Therefore, the Motion will be denied without prejudice.

Accordingly,

Defendant's Motion to Sever the Claims of Plaintiffs or, in the Alternative, Motion for Separate Trials (Dkt. 5) is **DENIED without prejudice**.

**DONE AND ORDERED** this 21st day of April, 2014.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record

8